IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LISA ANNE FAUSNAUGHT, )
)
    Plaintiff, )
)
 -vs- ) Civil Action No. 17-36
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Lisa Anne Fausnaught ("Fausnaught") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. She alleges a disability beginning on January 1, 2012. (R. 136-42) Following a hearing before an ALJ, during which time both Fausnaught and a vocational expert ("VE") testified, the ALJ denied her claim. Fausnaught appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [10] and [12].

### Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The

2

Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

    2. <u>The ALJ's Analysis</u>

At step one, the ALJ found that Fausnaught had not engaged in substantial gainful activity since January 1, 2012, the onset date. (R. 12) At step two, the ALJ concluded that Fausnaught has the following severe impairments: left knee osteoarthritis; history of right knee meniscal tear status-post arthroscopy; right ankle degenerative joint disease status-post open reduction internal fixation; right heel spur;

hypertension; obesity; major depressive disorder; anxiety disorder; and psychosis. (R. 12) Although the ALJ found reference to other impairments in the record, he determined that they were non-severe. (R. 13)

At step three, the ALJ concluded that Fausnaught does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ considered Fausnaught's physical impairments under Listings 1.02, 1.00Q, and 3.09. He considered her mental impairments under Listings 12.03, 12.04, and 12.06. (R. 13-14)

Prior to engaging in step four, the ALJ assessed Fausnaught's residual functional capacity ("RFC").[2] He found Fausnaught able to perform a range of sedentary work with certain restrictions. (R. 14) At step four, the ALJ determined that Fausnaught was unable to perform past relevant work as a personal care aide because such work was performed at the medium exertion, semi-skilled level. (R. 19)

Finally, at step five, the ALJ found that, considering Fausnaught's age, education, work experience, and RFC, there are significant numbers of jobs in the national economy that Fausnaught can perform. (R. 19-20) For instance, the ALJ explained that Fausnaught "will be able to perform the requirements of representative sedentary unskilled occupations such as an addresser clerk …, pari-mutual ticket checker …, and document preparer…." (R. 20)

3. Step Two – Urinary Incontinence

---

[2] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

4

Fausnaught urges that the ALJ erred at step two of the sequential evaluation process in determining that her urinary incontinence was non-severe. *See* ECF docket no. 11, p. 9-10. I disagree. The step two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r. of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1522(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 404.1522(b)[3] Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Newell*, 347 F3d at 546; *Mays v. Barnhart*, 78 Fed. Appx. 808, 811 (3d Cir. 2003), SSR 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. *Newell*, 347 F.3d at 546-47.

In this case, I agree with the Defendant that substantial evidence of record supports the ALJ's finding that Fausnaught's urinary incontinence is not severe. In this step-two analysis, the ALJ acknowledged Fausnaught's testimony of "a longstanding history of urinary frequency with daily accidents." (R. 12) Yet he found that the medical records documented "very limited treatment, noncompliance with recommended treatment and diagnostic testing, and generally unremarkable clinical and diagnostic findings." (R. 12) Imaging studies performed in 2013 did not reveal any evidence of

---

[3] The regulations list as additional examples, "(2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

5

pelvic or abdominal abnormalities. (R. 398) Similarly, a cystogram found no evidence of bladder leakage during full erect, straining erect, coughing erect, and straining oblique views. (R. 12, 362-68, 528) Although Fausnaught was prescribed medication, there is no indication on the record that she complied with recommended pelvic floor restoration physical therapy. (R. 519-20) Further, Fausnaught informed her physician that urinary incontinence had been a problem since she was in her 20s. (R. 521) Yet, as the ALJ noted, "there is no indication that it was a significant impediment to performing work activity in the past or appreciably worsened during the relevant period." (R. 13)

In addition, and in any event, the ALJ did not deny Fausnaught's application for benefits at step two of the analysis. Rather, the ALJ found in her favor at step two when he concluded that her knee and ankle impairments, right heel spur, hypertension, obesity, major depressive disorder, anxiety disorder, and psychosis were severe impairments. (R. 12-13) The ALJ ruled against Fausnaught after concluding that her RFC was sufficient to enable her to perform certain work existing in the economy. (R. 19-20) Because the ALJ found in her favor at step two, even if he had erroneously concluded that her urinary incontinence was not severe, any such error was harmless. *See Salles v. Comm'r. of Soc. Sec.*, 229 Fed. Appx. 140, 144-45, * n. 2 (3d Cir. 2007), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

In short, the ALJ's finding that Fausnaught's urinary incontinence is not severe is supported by substantial evidence of record and / or any error in this regard was harmless.

4. <u>Medical Opinions</u>

6

Fausnaught urges that the ALJ erred by not relying on opinions rendered by Dr. Sean Su and CRNP Rose Ann Flick. *See* ECF docket no. 11, p. 11-16. According to Fausnaught, Dr. Su's and Flick's opinions should have been given controlling weight. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id*, § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id*. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id*, § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, 'where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical

evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Soc. Sec. Admin.*, Civ. No. 10-2517, 2010 WL 5078238, at * 5 (3d Cir. Dec. 14, 2010).

The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d)(1), (3); *Dixon v. Comm'r of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating, "[o]pinions of disability are not medical opinions and are not given any special significance."). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation for his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Given this framework, I reject Fausnaught's contention that the ALJ erred with respect to his treatment of the medical opinions of record. Dr. Su's September 2014 opinion is a one page "Physician Verification Form" filed in the Court of Common Pleas of Erie County, Pennsylvania in connection with a domestic relations support claim. (R. 493) The form amounts to nothing more than a few filled in blanks indicating that

Fausnaught "has had a medical condition that affects his or her ability to earn income from: around 1/15/14 through currently." (R. 493). This does not constitute a "medical opinion" pursuant to the Regulations. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) Su's form contains no mention of Fausnaught's functional abilities or limitations. There is simply no explanation of how her impairments impact her ability to function. As such, it is not a medical opinion entitled to consideration. Further, Su's conclusion that Fausnaught is "unable to work" is not entitled to any weight because this issue is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1), (3). Consequently, the ALJ was not required to specifically reference Dr. Su's September 2014 report.[4] *See Housknecht v. Berryhill*, Civ. No. 16-1703, 2017 WL 3911067, * 6 (M.D. Pa. Aug. 4, 2017) (affirming an ALJ's decision to give "little weight" to a treating physician's completion of a form for domestic relations purposes, indicating that the form "was not an evaluation.")

     Nor am I persuaded that the ALJ erred in affording "little weight" to Flick's June 2015 opinions. The ALJ explained that he gave them little weight because Flick "failed to provide supportive objective findings and they are inconsistent with her own treatment records." (R. 17) These are appropriate reasons for rejecting Flick's opinions. 20 C.F.R. § 404.1527(f)(1) The ALJ also explained that Flick is not "an acceptable

---

[4] It is clear from the ALJ's opinion that he thoughtfully considered all of Dr. Su's medical records, indicating that "[l]ongitudinally, Dr. Su, the treating psychiatrist, consistently reported that the claimant was stable with prescribed medication that was tolerated well and opined that she had no more than moderate psychological impairment or difficulty in school, occupational, or social functioning." (R. 16)

9

medical source." (R. 17) See 2006 WL 2329939 (S.S.A.) The Regulations distinguish between acceptable medical sources and those who are not, for three reasons:

> First, we need evidence from "acceptable medical sources to establish the existence of a medically determinable impairment. See 20 C.F.R. § 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 C.F.R. § 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 C.F.R. § 404.1502 and 416.902, whose medical opinions are entitled to controlling weight. See 20 C.F.R. 404.1527(d) and 416.927(d).

2006WL 2329939, * 2 Additionally, Flick's June 2015 opinion is a checkbox form prepared by Fausnaught's attorney and lacks any meaningful explanation. "'[C]heck box' forms that require little or no explanation ... are 'weak evidence at best' in the disability context…." *Hevner v. S.S.A.*, 675 Fed. Appx. 182, 184 (3d Cir. 2017)

    Finally, Fausnaught urges that the ALJ erred in giving great weight to the state agency physician opinions because they had no history of treating her, no first-hand knowledge of her conditions, they provide scant reasons for their conclusions, and because they did not have the benefit of reviewing treatment records and opinions obtained after September 16, 2013. *See* ECF docket no. 11, p. 16-17. These arguments are not compelling. First, it is well established that state agency consultants have expertise in social security disability evaluations. See *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (stating that "state agent opinions merit significant consideration as well.") Second, the very nature of non-examining state agency consultanst as used in this case contemplates that they will offer an opinion after examining only the records, but not the patient. So a failure to personally examine Fausnaught does not preclude the ALJ from relying on the physician's opinion. Third, a review of the record confirms that the physicians did, in fact, provide reasons supporting

10

their conclusions in a manner consistent with the administrative process. (R. 71-82) Finally, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's reliance on it. Only where 'additional medical evidence is received that in the opinion of the ALJ … may change the State agency medical … consultant's finding …' is an update to the report required." *Chandler*, 667 F.3d at 361 (citations omitted). Here, the ALJ had all the records post-dating the state agency consultants' decisions and implicitly found that updated reports were not required.

Thus, after fully reviewing the parties' arguments and the record, I reject Fausnaught's contention that the ALJ erred in his assessment of the medical opinions.

5. Complaints of Pain

Lastly, Fausnaught argues that the ALJ erred by improperly evaluating her complaints of pain and discrediting those complaints. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. *See Zirsnak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R. 15) Pain alone, however, does not establish disability. 20 C.F.R. § 404.1529(a); 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).

In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities; descriptions of the pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. *Id.* Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his or her limitations or symptoms is less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

After a review of the record, I find that the ALJ followed the proper method to determine Fausnaught's credibility. As laid out in his decision, the ALJ considered the factors set forth above and adequately explained the reasoning behind his credibility determinations. (R. 14-19) Indeed, the AL directly addressed Fausnaught's testimony

12

that she experienced various forms of pain and did not reject her allegations entirely. Rather, the ALJ incorporated numerous limitations related to Fausnaught's pain complaints in the RFC finding. See (R. 14) (RFC finding containing limitations on, *inter alia*, pushing and pulling with bilateral lower extremities, stooping, climbing, crawling). Thus, I find that the ALJ properly evaluated Fausnaught's credibility as required by 20 C.F.R. § 404.1529 and SSR 96-7p. Furthermore, based upon the entire record as a whole, I find there is substantial evidence to support the ALJ's decision to find Fausnaught not entirely credible. (R. 14-19)[5] Therefore, I find no error in this regard. Consequently, remand is not warranted on this basis.

    An appropriate order shall follow.

---

[5] Fausnaught also contends that the ALJ failed to take note of her long work history. See ECF no. 11, p. 17 (stating that she "worked for 17 years prior to her disability [and that] this history alone supports a finding that her testimony is substantially credible.") Significantly, Fausnaught does not cite to any record evidence in support of this allegation. In fact, the ALJ explicitly considered Fausnaught's work history. The ALJ noted that "the record documents an inconsistent work history with numerous periods of minimal yearly earnings prior to the alleged onset of disability." (R. 18, 154)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LISA ANNE FAUSNAUGHT )
    Plaintiff, )
)
 -vs- ) Civil Action No. 17-36
)
NANCY A. BERRYHILL,[6] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

# ORDER OF COURT

Therefore, this 9th day of February, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED.

    BY THE COURT:

    /s/ Donetta W. Ambrose
    Donetta W. Ambrose
    United States Senior District Judge

---

[6] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.